IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Teresa M. Baker, ) | Civil Action No. 6:14-240-TMC-KFM |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting ) Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the court for a report and recommendation pursuant to Local Civ. Rule 73.02(B)(2)(a)(D.S.C.), concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act, as amended (42 U.S.C. 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.

## ADMINISTRATIVE PROCEEDINGS

The plaintiff filed applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits on August 24, 2010, alleging that she became unable to work on February 14, 2010. The applications were denied initially and on reconsideration by the Social Security Administration. On September 20, 2011, the plaintiff requested a hearing. The administrative law judge ("ALJ"), before whom the plaintiff and Thomas C. Neil, an impartial vocational expert, appeared on June 28, 2012, considered

---

[1]A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

the case *de novo*, and on July 23, 2012, found that the plaintiff was not under a disability as defined in the Social Security Act, as amended.  The ALJ's finding became the final decision of the Commissioner of Social Security when the Appeals Council denied the plaintiff's request for review on November 25, 2013.  The plaintiff then filed this action for judicial review.

In making the determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1)    The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.

> (2)    The claimant has not engaged in substantial gainful activity since February 14, 2010, the alleged onset date (20 C.F.R §§ 404.1571 *et seq.*, and 416.971 *et seq.*).

> (3)    The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, foot/toe numbness, and emphysema (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

> (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except the claimant is limited to occasional climbing of ramps and stairs and can never climb ladders, ropes, or scaffolds.  The claimant is capable of occasion[al] use of foot controls with her right lower extremity. She is capable of occasional stooping, kneeling, crouching, and crawling.  The claimant should avoid moderate exposure to respiratory irritants such as fumes, dust, odors, and gases and workplace hazards such as unprotected heights or dangerous moving machinery.

> (6)    The claimant is capable of performing past relevant work as a server and bartender. This work does not require the performance of work-related activities precluded by the

2

claimant's residual functional capacity (20 C.F.R. §§ 404.1565 and 416.965).

(7)    The claimant has not been under a disability, as defined in the Social Security Act, from February 14, 2010, through the date of this decision (20 C.F.R. §§ 404.1520(f) and 416.920(f)).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in 42 U.S.C. § 423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment that equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment that prevents past relevant work, and (5) has an impairment that prevents him from doing substantial gainful employment. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found not disabled at any step, further inquiry is unnecessary. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

3

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62, 1982 WL 31386, at *3.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert.  *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).  Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  The phrase "supported by substantial evidence" is defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a  verdict were the case before a jury, then there is "substantial evidence."

*Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citation omitted).

4

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings and that the conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The plaintiff was 53 years old on her alleged onset date of disability and was 55 years old on the date of the ALJ's decision. She has a high school education and past relevant work as a waitress and bartender.

The plaintiff has a history of degenerative disc disease of the lumbar spine and drop foot. She reported back pain beginning in November 2009, when she was taking laundry out of the washing machine (Tr. 257). She was treated by Jeffrey Buncher, M.D., and his colleagues at Charleston Pain and Rehabilitation Center (Tr. 310-21, 344-46). On November 17, 2009, the plaintiff presented to Dr. Buncher's office with complaints of sciatic pain and some numbness in her right foot (Tr. 318). She had also been assaulted and wanted a chest x-ray as she suspected her ribs might have been broken.

In December 2009, a right hip x-ray conducted in light of the plaintiff's complaints about sciatica pain revealed no significant bony abnormalities, (Tr. 274), and a lumbar spine MRI revealed degenerative changes including disc space narrowing at the L4-L5 and L5-S1 levels, mild retrolisthesis at L5-S1, and no acute bony abnormalities (Tr. 275). A subsequent MRI of the plaintiff's lumbar spine conducted in January 2010 revealed a herniated disc at the L4-L5 level, as well as other degenerative changes (Tr. 261, 264-65).

The plaintiff was also followed at Barrier Islands Free Medical Clinic ("Barrier") on St. John's Island. Notes dated December 16, 2009, document complaints of right foot numbness and pain with walking (Tr. 302). On exam, she had some tenderness, decreased sensation to light touch, pinprick and vibration right anterior foot and toe.

Impression was right sided sciatica, slowly improving.  It was recommended that she consult an orthopedist.

Barrier notes dated December 22, 2009, indicate that the plaintiff was examined by a "back doctor" (Tr. 301).  She reported a five week history of buttock and foot pain as well as numbness in her right great toe.  Sitting on the toilet exacerbated her pain.  She had tried a dose pak, which helped for about a week.  Her chief complaint was leg weakness that caused her difficulty walking secondary to a lack of sensation in her right leg and foot.  She denied incontinence and perineal numbness.  On exam, she ambulated with a right-sided antalgic gait.  She was unable to heel/toe walk on the right, and strength in her right leg was reduced compared to her left.  Achilles reflexes were absent on the right, but she had full range of motion in the lumbar spine.  Assessment was right leg numbness and drop foot.  Recommended measures included an MRI of her lumbar spine, NSAIDs, and likely surgical correction due to weakness.

The plaintiff was treated on December 29, 2009 for bronchitis and asthma exacerbation (Tr. 300).  On exam, she had positive inspiratory and expiratory wheeze.  She was prescribed antibiotics and steroids.

An MRI on January 4, 2010, showed a large right paracentral posterolateral disc herniation at L4-5, which compressed the right L5 nerve root (Tr. 265-66).  There was also evidence of an annular tear. At L5-S1, a prominent disc/osteophyte produced "significant compression" of the right S1 nerve root.  On January 19, 2010, the plaintiff was seen at Barrier and was prescribed Tramadol for her back pain (Tr. 199).  On February 11, 2010, Dr. Buncher noted that the plaintiff's anxiety was stable.

Starting on February 14, 2010, the plaintiff had a four-day hospital admission at Roper Hospital in Charleston for pain control after experiencing an exacerbation of her back pain that radiated down her right leg.  She also had right great toe numbness and a partial foot drop (Tr. 256).  She dragged her right foot when walking (Tr. 258).  While she

was at Roper, she underwent back surgery, an L4-L5 discectomy (Tr. 256, 263).  Upon discharge, the right foot drop persisted, but the plaintiff did well regarding her back surgery (Tr. 256).  She received an ASO brace, prescriptions for Percocet, and instructions to perform physical therapy at home.  She was restricted from heavy lifting and driving for "at least several weeks" (Tr. 256).

The plaintiff followed up with Dr. Buncher in April 2010 (Tr. 316).  She was six weeks post-surgery and reported continued numbness and pain in the right foot and toe. Medications included Nexium, Soma, and Klonopin.

On April 27, 2010, the plaintiff was seen at Barrier for right ear pain and continued numbness and foot drop following her back surgery.  The plaintiff reported that she received a foot splint and physical therapy and she felt like she was stepping on glass with her big toe (Tr. 297).  Assessment was neuropathic pain.

The plaintiff visited Dr. Buncher on June 16, 2010, for follow up on her hypertension, anxiety, and asthma (Tr. 285).  Dr. Buncher indicated that he was willing to perform a consultative examination if required.

On July 7, 2010, the plaintiff reported to another doctor at Barrier that she had fallen down the stairs and sustained a left leg hematoma.  The Barrier provider reported that the plaintiff had no difficulty ambulating (Tr. 296).  On September 22, 2010, the plaintiff reported to a Barrier doctor that she had back pain relief after her February 2010 surgery, but the pain had returned two weeks earlier.  She still had numbness in her foot and her incontinence had returned (Tr. 295).  The plaintiff asked to be changed from Paxil to Klonopin.

On November 10, 2010, Dr. Buncher reported that the plaintiff still had weakness in her right lower extremity and difficulty walking.  She was using a brace, which was "very limiting," and doing rehabilitation exercises at home in hopes of being able to return to work (Tr. 315).  Dr. Buncher also provided treatment for generalized anxiety

disorder, controlled by medication (Tr. 344), asthma that was controlled with inhalation medication (Tr. 319), and gastroesophageal reflux disease ("GERD") (Tr. 317).

In December 2010, the plaintiff sought treatment at Barrier for congestion and shortness of breath (Tr. 354). The physician who saw her noted that she had not had any return of normal sensation in her right foot in the ten months since her surgery. "I doubt that there will be any neurological return now. She is happy with relief of pain."

On January 27, 2011, orthopedist Harriet Steinert, M.D., examined the plaintiff for back pain complaints at the request of the state agency. The plaintiff told Dr. Steinert that she experienced pain in her lumbar spine, especially on the left, which radiated down to her calf. She estimated she could sit and walk for one hour each. She reported numbness in two toes on her right foot and wore a splint on her ankle. In addition, the plaintiff reported anxiety and panic symptoms, especially at night. She further reported pain across her shoulders, GERD, and a hiatal hernia (Tr. 246-49). The plaintiff got on and off the exam table without difficulty; had full range of motion in all extremity joints except for her right ankle; exhibited no motor deficits in any extremity; had no muscle atrophy or joint tenderness, swelling, or inflammation; had decreased sensation to touch in her right toes; exhibited no difficulty taking off and putting on her shoes and socks; and had normal deep tendon reflexes ("DTR") in all extremities except her right Achilles tendon, in which DTR's were slightly decreased, no pedal edema in either foot, no spinal tenderness, and negative straight leg raising tests bilaterally. The plaintiff also had the ability to walk on her toes but not on her heels, squat, walk across the room without an assistive device with a slightly limping gait, and do tandem walking (Tr. 247). Dr. Steinert described the plaintiff's limitations related to daily activities and work activity as follows: "[Plaintiff] has pain in her lumbar spine. She is unable to fully dorsiflex her right ankle" (Tr. 247).

Also in January 2011, Mary S. Lang, M.D., a state agency medical consultant, reviewed the plaintiff's file and concluded that she could perform the demands of light

8

exertional work, had limitations related to pulling with her lower extremities and never should use her right foot for controls, could perform postural activities occasionally, needed to avoid concentrated exposure to respiratory irritants like fumes, odors, dusts, and gases, and needed to avoid even moderate exposure to hazards like working with dangerous machinery (Tr. 337-40). Dr. Lang discussed the medical evidence to date, including Dr. Steinert's report (Tr. 343). She noted that the evidence demonstrated that the plaintiff's asthma was stable, and she used her inhaler without exacerbation of symptoms, her lumbar impairment improved after surgery, she had a slightly limping gait but could walk across the room without using an assistive device, she could walk on her toes but not on her heels, and she had full range of motion in all joints except her right ankle joint (Tr. 343). Dr. Lang also noted that the plaintiff's GERD was amenable to medication and not severe (Tr. 338).

On February 9, 2011, just about a year after her surgery, the plaintiff told the physicians at Barrier Island that her lower back pain was worsening (Tr. 344). In addition, the upper respiratory infection symptoms she had been experiencing had returned after a period of improvement. Assessment was asthma, with increased shortness of breath and wheezing. She returned on February 24, 2011, and was congested and short of breath (Tr. 352).

A chest x-ray conducted in April 2011 revealed normal findings (Tr. 356-57). In June and July of 2011, Michael Spandorfer, M.D., of Carolina Lung & Critical Care, evaluated the plaintiff's lung function (Tr. 374-81). Dr. Spandorfer's examination, including pulmonary function tests (Tr. 377-78), revealed that the plaintiff's asthma caused mild to moderate airflow limitation with moderate symptomatology, for which he prescribed a short course of Prednisone, increased his Advair dosage, and prescribed Singulair; GERD for which he continued Nexium; and a hiatal hernia for which he referred the plaintiff to Damon Simpson, M.D., for possible fundoplication surgery for her GERD (Tr. 375, 380). During the July visit, the plaintiff reported that she had been very weak with chills and low energy for

9

the past few days.  She was still wheezing. She told Dr. Spandorfer that Advair "helps a lot" but was only getting it via samples due to no insurance.  A CT of the chest showed emphysema, tubular bronchiectasis, a large hiatal hernia and a nodule in the left breast (the breast nodule was determined later to be benign) (Tr. 381-82)).  The plaintiff was given more samples and antibiotics.

On August 10, 2011, Cleve Hutson, M.D., another state agency medical expert, reviewed the plaintiff's file and concurred with Dr. Lang that the plaintiff could perform light exertional work, but never could perform foot controls with her right foot (Tr. 406).  Dr. Hutson opined that the plaintiff never should climb ladders, ropes, or scaffolds; frequently could balance; occasionally could climb ramps and stairs, stoop, kneel, crouch, and crawl; and needed to avoid even moderate exposure to dusts, fumes, gases, poor ventilation, and hazards like working with dangerous machinery (Tr. 407-08).  Dr. Hutson provided a discussion of the evidence that he reviewed in making his determination, as well as his rationale for the same (Tr. 412).  Dr. Hutson further found that the plaintiff's allegations of inability to stand or sit for more than one hour were not totally credible and not supported by the evidence.  Her allegations of difficulty breathing were credible, and were accounted for in the residual functional capacity ("RFC") by restrictions from fumes and gases. The consultant found no evidence indicating that GERD or hiatal hernia caused any work-related restriction in functioning (Tr. 406-12).

The plaintiff continued to visit Barrier (Tr. 421-23).  She was prescribed medications for her back (Flexeril), anxiety (Klonopin), and was treated for sinusitis and bronchitis. On November 9, 2011, she was treated for cough and dyspnea, asthma/COPD exacerbation, cellulitis in her toe, and possible diabetes (Tr. 419-20).

In a statement dated December 1, 2011, Dr. Buncher indicated that the plaintiff suffered from generalized anxiety disorder for which she was prescribed Klonopin. He indicated that the medication was effective, that she had a normal mental status, and

10

that she exhibited no work-related limitations due to her anxiety disorder (Tr. 312).  Dr. Buncher's notes on December 8, 2011, mention possible surgical intervention for the plaintiff's persistent GERD (Tr. 418).  She continued to seek treatment for persistent recurrent bronchitis through March 2012 (Tr. 427-30).

On February 24, 2012, the plaintiff was evaluated at Ashley River Surgical Associates for consideration of surgery to address her GERD.  Dr. Simpson reported that the plaintiff had severe reflux, dysphasia, and delayed gastric emptying (Tr. 434).  On April 18, 2012, Dr. Simpson performed surgery, an elective Nissen fundoplication, to relieve her GERD, and a laparoscopic ventral hernia repair (Tr. 435, 439).  Post-operatively in April 2012, a chest x-ray revealed a possible hiatal hernia with secondary obstruction of the esophagus (Tr. 450); a barium swallow study revealed no esophageal leak and no emptying of the esophagus into the stomach (Tr. 454); and an esophagogastroduodenoscopy ("EGD") revealed esophagitis and active chronic gastritis (Tr. 437, 448).  On April 21, 2012, the plaintiff was evaluated for continued dysphagia (Tr. 439-41).

On a form completed in connection with her DIB and SSI applications, the plaintiff alleged disability due to numbness caused by a herniated disc, big toe numbness and right foot swelling upon standing on her right foot, and an inability to walk "much" due to weakness and a lack of energy (Tr. 216-17).  On a function report form, the plaintiff indicated that she could stand for 30 minutes to prepare a meal; performed light housekeeping and laundry without lifting; drove; shopped in stores for groceries once weekly for 30 minutes; had hobbies consisting of reading, watching television, growing plants, and gardening; and was socially withdrawn due to her frustration with her alleged inability to function (Tr. 204, 206, 208).  The plaintiff claimed she could walk one-half block before needing to rest for 15 minutes (Tr. 208).  She reported using a cane and brace/splint (Tr. 209).

11

### *Administrative Hearing*

At the administrative hearing, the plaintiff testified that she lived alone in a garage apartment outside her mother's home (Tr. 24). The plaintiff testified that she last worked in a bar, but was laid off in 2009. There, she reportedly lifted kegs of beer onto dolly carts (Tr. 25). The plaintiff testified that all of her past work consisted of bartending or waitressing and included rotating tasks such as carrying trays and bartending (Tr. 26). The plaintiff testified that she could not return to full-time work due to her herniated lumbar disc and because she injured her back when taking clothes out of her washing machine; "I felt something pop and it ran all the way down my leg to my big toe and my big toe went numb" (Tr. 26). She also testified that she had sciatica pain and that her right foot dragged and made her stumble (Tr. 26-27). The plaintiff testified that her February 2010 surgery relieved her sciatic nerve pain; it "completely took that away" (Tr. 27). She testified that toe numbness remained, but her leg was not numb (Tr. 27-28). The surgery also relieved the plaintiff's back pain, but she experienced pain as she leaned over or if she moved around a lot (Tr. 28). Soaking her right foot in Epsom salt provided some relief for the pain related to her dropped toe (Tr. 29). The plaintiff testified that pain medication (Ultram, Neurontin, and Soma) "helps better than without anything[,] " but she indicated that controlled substances would help a lot (Tr. 30). The plaintiff testified that she experienced no medication side effects (Tr. 30).

When the ALJ again asked the plaintiff what prevented her from returning to work, the plaintiff testified, "It's my breathing now. I have emphysema . . ." (Tr. 31). The plaintiff also identified asthma as a reason that she could not work, indicating that the second hand smoke from working in a bar for years caused her breathing difficulties (Tr. 31). The plaintiff testified that her nebulizer treatments helped her (Tr. 31). The plaintiff testified that her reflux symptoms were "a little bit better" after the April 2012 hernia surgery (Tr. 33). She still had abdominal pain due to her gastritis (Tr. 33). The plaintiff testified that

12

she could do light household chores, but experienced lower back pain upon dusting, pushing a broom, pulling, and leaning over (Tr. 34).

The plaintiff testified that she could stand for only 15 minutes in one spot without sitting or walking away, due to toe pain; could sit for one hour before low back pain occurred; could walk 1.5 times the length of the hearing room before stopping due to toe pain; and could lift ten pounds only due to back pain (Tr. 35-36).

The vocational expert testified that the plaintiff's past work as "a waitress, informal[,]" was semi-skilled, light work, and her past bartender job was semi-skilled work that was light exertional work or medium exertional work if kegs were lifted on an occasional basis (Tr. 37). The ALJ asked the vocational expert to consider a hypothetical individual who had the same vocational profile as the plaintiff and could perform the same range of light work described in the RFC finding (Tr. 15-16, 37-38). The ALJ asked the vocational expert whether such an individual could perform the plaintiff's past relevant work (Tr. 38). The vocational expert responded, "[T]he informal waitress would apply. The bartender as we would normally find it would apply" (Tr. 38). The vocational expert further testified that other jobs would be available, including the occupations of parking lot attendant and cleaner/housekeeper (Tr. 38). The vocational expert testified that if the worker could only walk two hours per day, she would be limited to sedentary work, which would preclude the plaintiff's past relevant work (Tr. 39-40). Further, if the worker was off task for more than an hour per day, she would not be capable of full time work (Tr. 39).

## ANALYSIS

The plaintiff argues that the ALJ erred by (1) failing to conduct a proper RFC analysis and (2) failing to properly assess her credibility.

***Residual Functional Capacity***

The plaintiff argues that the ALJ's RFC analysis does not rest on substantial evidence and fails to address specific functions (pl. brief 11-17). Social Security Ruling ("SSR") 96-8p provides in pertinent part:

> The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraph (b), (c), and (d) of 20 C.F.R. §§ 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional level of work, sedentary, light, medium, heavy and very heavy.

SSR 96-8p, 1996 WL 374184, at *1. The ruling further provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7 (footnote omitted). Further, "[t]he RFC assessment must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." *Id.* Moreover, "[t]he RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." *Id.*

The plaintiff specifically argues that the ALJ failed to adequately address the functional limitations imposed by her foot/toe numbness and emphysema, both of which the ALJ found to be severe impairments (Tr. 14). The plaintiff argues that while both of these

14

impairments could reasonably cause difficulty walking for six hours per day, the ALJ never addressed that key function (pl. brief 12).

In making the RFC finding, the ALJ explained that the plaintiff's "right lower extremity numbness and weakness cause some exertional, postural, and environmental limitations, which have been considered when establishing the [RFC]" (Tr. 17).   The ALJ limited the plaintiff to light work, with occasional climbing of ramps and stairs; occasional stooping, kneeling, crouching, and crawling; and no climbing of ladders, ropes, and scaffolds.  He also limited the plaintiff to only occasional use of the right foot and toe for foot controls and limited her exposure to respiratory irritants and work at unprotected heights or around dangerous machinery (Tr. 15-16).

In making this assessment, the ALJ recognized that the plaintiff's right lower extremity numbness and weakness remained after the surgery that relieved her back pain. He also recognized that the plaintiff had some difficulty walking (Tr. 17).  The undersigned finds that the ALJ did not ignore evidence that the plaintiff's right toe/foot impairment affected her walking. The ALJ recognized the same, but determined that it did not preclude the walking requirements of light exertional work (Tr. 17).  The plaintiff argues that the ALJ "ignored" Dr. Steinert's notation that the plaintiff had a "slightly limping gait" (pl. brief 12; *see* Tr. 247).  However, as argued by the Commissioner, that assessment does not equate to a finding that the plaintiff had greater walking limitations than those provided in the RFC. "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" (pl. reply 2 (quoting SSR 83-10, 1983 WL 31251, at *6)).  The ALJ specifically noted Dr. Steinert's findings that the plaintiff could perform tandem walking and walk on her toes - though not on her heels, had no motor deficits or muscle atrophy, had full range of motion of all joints with the exception of her right ankle, and had normal peripheral pulses (Tr. 18; *see* Tr. 246-49). Notably, the ALJ gave "great weight" to the opinion of state agency medical consultant Dr. Hutson (Tr. 18;

15

*see* Tr. 405-12).  The ALJ specifically noted Dr. Hutson's finding that "while [the plaintiff's] allegations of numbness and other impairments associated with her right lower extremity are credible and supported by medical evidence and her consistent subjective complaints, especially in light of a recently sprained ankle, the [plaintiff's] allegations of an inability to stand or sit for more than an hour are not fully supported when considering the medical evidence of record" (Tr. 18; *see* Tr. 412).  Dr. Hutson found that the plaintiff could stand and/or walk about six hours in an eight-hour day, with normal breaks (Tr. 406).  Dr. Hutson specifically considered Dr. Steinert's notes from January 2011 showing the plaintiff could walk on her toes, but not her heels, could perform a tandem walk, could squat down, and could walk across the room without an assistive device, albeit with a slightly limping gait (Tr. 412; *see* Tr. 247).  He also noted that Dr. Buncher's examination in April 2010 showed that the plaintiff had a normal gait (Tr. 412; *see* Tr. 316).  Based upon the foregoing, the ALJ's implied finding[2] that the plaintiff could stand and/or walk for up to six hours is based upon substantial evidence.

The plaintiff does not identify what additional restriction is necessary to account for her asthma/emphysema (pl. brief 12-13).  In his RFC finding, the ALJ explained that he included a requirement that the plaintiff avoid workplace respiratory irritants to accommodate the functional limitations caused by her asthma/emphysema and associated symptoms (Tr. 17). The ALJ discussed the evidence showing that the plaintiff's chest x-rays were unremarkable, pulmonary function testing revealed she had only mild to moderate airflow limitation with moderate symptomatology, and medication (Advair) provided good results (Tr. 17; *see* Tr. 377-78). Given this evidence, it was reasonable for the ALJ to conclude that the plaintiff should avoid moderate exposure to respiratory irritants (Tr. 16).

---

[2]The undersigned agrees with the plaintiff that since the ALJ placed no restriction on her ability to stand and walk, he impliedly found that she was capable of up to six hours of standing and walking (*see* pl. reply 2).

16

Based upon the foregoing, this allegation of error is without merit.

***Credibility***

The plaintiff next argues that the ALJ's credibility analysis is not based on substantial evidence and does not follow the proper legal framework (pl. brief 13-16). The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). In *Hines v. Barnhart*, 453 F.3d 559 (4th Cir. 2006), a Fourth Circuit Court of Appeals panel held, "Having met his threshold obligation of showing by objective medical evidence a condition reasonably likely to cause the pain claimed, [the claimant] was entitled to rely exclusively on subjective evidence to prove the second part of the test, i.e., that his pain [was] so continuous and/or severe that it prevent[ed] him from working a full eight-hour day." 453 F.3d at 565. However, the court in *Hines* also acknowledged that "'[o]bjective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available should be obtained and considered.'" *Id.* at 564 (quoting SSR 90-1p, 1990 WL 300812).

The court further acknowledged:

> While objective evidence is not mandatory at the second step of the test, "[t]his is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work. They most

17

> certainly are. Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers."

*Id*. at 565 n.3 (quoting *Craig*, 76 F.3d at 595). *See Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005); 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled.  However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements."); SSR 96-7p, 1996 WL 374186, at *6 ("[T]he absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms is only one factor that the adjudicator must consider in assessing an individual's credibility and must be considered in the context of all the evidence.").

A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001).  Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." 1996 WL 374186, at *4. Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." *Id.*

18

The factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

> (1)    the individual's daily activities;
>
> (2)    the location, duration, frequency, and intensity of the individual's pain or other symptoms;
>
> (3)    factors that precipitate and aggravate the symptoms;
>
> (4)    the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
>
> (5)    treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
>
> (6)    any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and
>
> (7)    any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

*Id.* at *3.  *See* 20 C.F.R. §§ 404.1529(c), 416.929(c).

The plaintiff argues that the ALJ changed his mind about whether objective evidence supported her allegations (pl. brief 15-16).  In support of this argument, the plaintiff points to the following two statements by the ALJ:

> [T]he [ALJ] finds that [the plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [the plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment.
>
> . . . .
>
> While the medical evidence of record establishes the existence of the abovementioned impairments, the objective findings do not confirm that these impairments are of such severity that they could reasonably be expected to produce the degree of pain and functional limitation alleged.

19

(Pl. brief 15-16 (citing Tr. 17-18)). The plaintiff asserts, "The ALJ seems to say that the medical evidence supports the alleged limitations, but other evidence does not" (pl. brief 16). The undersigned disagrees. The ALJ was apparently explaining that, as to the first step of the credibility analysis, the medical evidence confirms that the plaintiff had impairments that potentially could cause limitations of disabling severity, as alleged by the plaintiff. However, the ALJ further explained at the end of the RFC assessment that the evidence failed to demonstrate that the plaintiff's impairments actually were severe enough to cause the degree of functional limitation that the plaintiff alleged (Tr. 17-18). These statements are not inconsistent. It was only after the plaintiff met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed, that the ALJ could proceed to the second step of the analysis to evaluate the intensity and persistence of the plaintiff's subjective complaints, and the extent to which the symptoms affected her ability to work. *See Craig*, 76 F.3d at 595.

The ALJ did not reject the plaintiff's claims outright nor ignore her subjective statements. Instead, the ALJ recognized that the plaintiff's impairments caused some significant, but not disabling, limitations and accounted for the same in the RFC finding. The ALJ provided several reasons for his credibility finding (Tr. 13-14, 17-18). First, the ALJ cited the fact that the plaintiff received unemployment benefits during the period that she claimed to be disabled from all work (Tr. 13-14). The ALJ provided the following rationale for his reliance on this factor:

> In order to receive state unemployment benefits, an individual must certify that they are able to work, are available for full-time work and willing to accept suitable work if offered, and are actively seeking full-time work each week. *See Black v. Apfel*, 143 F.3d 383 (8th Cir. 1998) (stating that acceptance of unemployment benefits, which entails an assertion of the ability to work, is facially inconsistent with a claim for disability).

(Tr. 13-14). In support of her argument that the ALJ's consideration of this fact was in error, the plaintiff points to *Richwalski v. Colvin*, C.A. No. 6:13-132-MGL, 2014 WL 2614105, at

20

*10-11 (D.S.C. June 9, 2014), where this court affirmed the Commissioner's final decision, finding that "the ALJ properly considered the plaintiff's receipt of unemployment benefits as just one of several factors that informed his ultimate assessment of the plaintiff's credibility." *Id.* at 11. The plaintiff attempts to distinguish this case by arguing that the ALJ did not cite "many" other factors for his credibility assessment (pl. brief 13). The undersigned disagrees and finds that the ALJ properly considered the plaintiff's receipt of unemployment benefits as just one factor in his credibility finding, as will be discussed further below. *See Brannon v. Astrue*, C.A. No. 1:11–1568–SVH, 2012 WL 3842572, at *11 (D.S.C. Sept.4, 2012) ("The ALJ noted Plaintiff's application for unemployment benefits as one of many factors impacting his credibility determination and at no point stated that the application barred Plaintiff's application for disability benefits."); *Elder v. Astrue*, C.A. No. 3:09-2365-JRM, 2010 WL 3980105, at *10 (D.S.C. Oct. 8, 2010) (ALJ's credibility finding supported in part by evidence that plaintiff applied for unemployment benefits).

In the credibility analysis, the ALJ also noted that the plaintiff provided inconsistent statements about her specific work demands in her past waitress/bartending job (Tr. 17). Specifically, in a report completed in connection with her DIB and SSI applications, the plaintiff indicated that she lifted 20 pounds maximum and frequently lifted ten pounds (Tr. 17; *see* Tr. 197), but she testified at the hearing, where she had the benefit of counsel, that she lifted beer kegs and confirmed that the kegs weighed 75-100 pounds (Tr. 17; *see* Tr. 25-26). The plaintiff argues that the admittedly inconsistent statements represent nothing more than a "meaningless variation in her description of her prior job duties" (pl. brief 13). However, as argued by the Commissioner, variations in a claimant's statements, particularly about the demands of her past work, are not meaningless (def. brief 16). The Commissioner relies on claimants to provide an accurate description of the duties entailed in their past work. In this matter, the inconsistency is critical because the initial statement demonstrates that the plaintiff can perform her past work despite her

21

impairments, but the plaintiff later at the administrative hearing claimed that she lifted substantially heavier weight as a waitress. The undersigned finds that the ALJ did not err in citing this inconsistency, and his reliance, in part, upon the same to make the credibility finding was reasonable.

The ALJ next discussed the objective medical evidence that showed the plaintiff's back pain was relieved by her February 2010 surgery, her asthma and emphysema caused mild to moderate symptoms and had not required emergent treatment in years, the plaintiff had full range of motion in all extremity joints except for her right ankle, and no medical source, treating, examining, or reviewing, opined that the plaintiff's impairments were severe enough to preclude all work activity (Tr. 17-18). After his discussion of this objective medical evidence, the ALJ acknowledged that the record contained "positive findings that somewhat support [the plaintiff's] subjective symptoms and reported limitations," and those limitations were included in the RFC finding (Tr. 16-18). However, as noted, the ALJ ultimately concluded that the evidence did not support the degree of pain and functional limitation that the plaintiff alleged (Tr. 18).

The plaintiff further argues that the ALJ erred in adopting the opinion of state agency medical expert, Dr. Hutson, that she could stand/walk for six hours, because Dr. Hutson failed to provide an explanation for that assessment. As discussed above, the undersigned finds that the ALJ did not err in giving "great weight" to Dr. Hutson's opinion as Dr. Hutson provided a rationale for his opinion and cited objective evidence to support the same (Tr. 412). The ALJ was required to consider the state agency physician assessments as opinion evidence. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) ("State agency medical and psychological consultants . . . are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants . . . as opinion evidence,

22

except for the ultimate determination about whether you are disabled."). Importantly, no medical source, treating, examining, or reviewing, opined that the plaintiff's impairments were severe enough to preclude all work activity (Tr. 17-18). *See* SSR 96-6p, 1996 WL 374180, at *3 ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir.1984) ("[T]he testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record. . . . [W]e have also ruled that the testimony of a non-examining physician can be relied upon when it is consistent with the record.") (citations omitted).

In reviewing a Commissioner's decision, reviewing district courts "do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Craig*, 76 F.3d at 589. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (Section 405(g) precludes *de novo* review, and requires a court to uphold the Commissioner's decision "even should the court disagree with such decision as long as it is supported by 'substantial evidence.'"). Based upon the foregoing, the undersigned finds that the ALJ properly evaluated the plaintiff's credibility, and the findings are based upon substantial evidence.

## CONCLUSION AND RECOMMENDATION

The Commissioner's decision is based upon substantial evidence and is free of legal error. Now, therefore, based upon the foregoing,

IT IS RECOMMENDED that the Commissioner's decision be affirmed.

IT IS SO RECOMMENDED.

s/ Kevin F. McDonald
United States Magistrate Judge

April 20, 2015
Greenville, South Carolina